[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MARCH 7, 2008
THOMAS K. KAHN
CLERK

_____

No. 05-16703

_____

D. C. Docket No. 01-08037-CV-1-IPJ-RRA

KIRLEW S. GORDON,

Petitioner-Appellant,

versus

UNITED STATES OF AMERICA,

Respondent-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

**(March 7, 2008)**

Before PRYOR, KRAVITCH and ALARCÓN,* Circuit Judges.

PRYOR, Circuit Judge:

_____

*Honorable Arthur L. Alarcón, United States Circuit Judge for the Ninth Circuit, sitting
by designation.

We sua sponte vacate and reconsider our original opinion in this matter. We substitute the following opinion for our original opinion.

This appeal requires us to decide two issues about the relation between the standard that governs plain error review on direct appeal and the standard that governs collateral review of ineffective assistance of counsel. The issues are whether counsel for Kirlew Gordon rendered ineffective assistance by neglecting to object to two alleged errors of the district court: (1) a failure to inform Gordon of the nature of the charges to which he was pleading, and (2) a failure to address Gordon personally concerning his right to allocute. Gordon pleaded guilty to one count of engaging in a continuing criminal enterprise, 21 U.S.C. § 848, and one count of conspiracy to import cocaine, 18 U.S.C. § 371. At Gordon's plea colloquy, the district court did not explain the nature of these charges to Gordon. The court asked Gordon whether his counsel had explained to him the nature of the charges and allowed the prosecutor to recite at length an earlier discussion in which the prosecutor clarified for Gordon, in the presence of Gordon's counsel, the nature of the charges. Gordon stated that his attorney had explained the charges to him, he understood them, and the prosecutor's description of their earlier conversation was accurate. Before it sentenced Gordon, the district court asked counsel for both parties whether they had anything further to say, but the court did

not address Gordon personally to determine whether he wanted to speak. As to both matters, we conclude that counsel for Gordon did not render ineffective assistance and deny Gordon's petition.

## I. BACKGROUND

In November 1999, Gordon agreed to plead guilty to engaging in a continuing criminal enterprise and conspiring to import cocaine, which were two counts of a four-count indictment, and Gordon waived his right to "appeal from any sentence, so long as it is within the guideline range." In exchange, the government agreed to recommend that Gordon be sentenced at the low end of the Guidelines range and receive a three-level reduction for acceptance of responsibility, and the government agreed to file a motion for downward departure for providing substantial assistance. At his plea hearing, Gordon testified that he read and understood English. He said his attorney had explained to him the elements of the offenses and the potential penalties.

The prosecutor then stated to the court that, earlier that morning, Gordon had expressed concern that he seemed to be pleading guilty to causing the death of Michelle Goodwin, a drug courier who died after cocaine packages she was carrying in her body burst and the cocaine entered her bloodstream. The prosecutor stated that he explained to Gordon, in the presence of Gordon's attorney

3

and a United States Marshal, that Gordon was not being charged with causing Goodwin's death, but that the continuing criminal enterprise count to which Gordon was pleading guilty incorporated by reference the provisions and punishments for another offense. See 21 U.S.C. § 846. A defendant who is found guilty of conspiring to import drugs under section 846 is subject to a 20-year mandatory minimum sentence if a person is seriously injured or dies as a result of the "use" of the drugs.

The prosecutor stated that Gordon also expressed concern that the government stated that the profits obtained from the drug activity totaled over $1 million. The prosecutor explained to Gordon that there was no documentary evidence that Gordon received $1 million in profits, but that there were Western Union receipts evidencing that over $1 million had been wired to his wife, Ann Marie Gordon, and several aliases used by her.

The prosecutor stated that, after these matters had been explained to Gordon, Gordon consulted with his attorney for a few minutes and then stated he was satisfied with these answers. The district court then asked Gordon whether the conference described by the prosecutor took place and whether the prosecutor's summary was an approximate description of what the prosecutor had said. Gordon replied in the affirmative. The prosecutor then recited the facts that the

4

government was prepared to prove at trial.

The prosecutor stated that, in July 1993, Michelle Goodwin, the wife of a U.S. Army sergeant, collapsed at Fort McClellan and soon afterward died in a hospital. An autopsy revealed over 30 bindles of cocaine in her stomach and colon, at least two of which had leaked cocaine into her bloodstream and caused her death. Her death prompted an investigation by the U.S. Army, the Drug Enforcement Administration, the U.S. Customs Service, the Federal Bureau of Investigation, and a local drug task force into the source of the drugs. These agencies investigated rumors that people with Jamaican connections were smuggling drugs into the Anniston, Alabama, area, and their investigation ultimately led them to Kirlew Gordon and his wife, Ann Marie.

The sworn statements of numerous cooperating individuals and substantial documentary evidence—phone records, Western Union receipts, and Western Union computer records evidencing over $1 million in profits sent to Ann Marie or one of her known aliases—would establish that the Gordons had been running a drug smuggling and distribution operation since 1993. Kirlew controlled the operation from Anniston and Ann Marie assisted him in Jamaica and Palm Beach, Florida. The Gordons recruited people to travel from Atlanta or Palm Beach to Kingston, Jamaica, where they would secrete cocaine on or in their bodies at a

house identified and photographed by government agents. The recruits would then travel to Atlanta where they either boarded a bus to Anniston or were met by Kirlew and transported to Anniston. Several cooperating witnesses, including some of Gordon's distributors and other drug couriers, would testify consistent with these details and would state that Kirlew and Ann Marie ran the organization.

The last known overt act of the conspiracy occurred on September 3, 1997, when Kirlew and his sister, Leonie Grant, were arrested traveling west on Interstate 20 shortly after crossing into Alabama. An anonymous caller, suspected of being Ann Marie, provided specific information about the individuals in the car, including their names, the type of luggage they would be carrying, the airline they would be flying from Palm Beach to Atlanta, and that Grant would be the one transporting the cocaine. After being questioned by officers, Grant removed a package of crack cocaine from her underwear and ultimately removed a second one from her vagina. The net weight of cocaine base was almost half a kilogram. Grant would testify that she brought cocaine to Anniston for the Gordons on several earlier occasions. A DEA agent who had reviewed all of the witness statements and documentary evidence would testify that the Gordons' organization had distributed between 10 and 24 kilograms of cocaine base.

After the factual basis of the plea agreement had been described, Gordon

pleaded guilty as follows:

> COURT:     Mr. Gordon, you heard what the government expects to
> prove . . . and you heard what Mr. McGregor said the
> substance of your conversation and your lawyer's
> conversation with him were this morning where it was
> explained . . . exactly what you are charged [with] in this
> case.
>
> GORDON:   Yes, ma'am.
>
> COURT:     Do you understand now?
>
> GORDON:   Yes, ma'am.
>
> COURT:     Having heard this, how do you plead to the offense of a
> continuing criminal enterprise in Count One?
>
> GORDON:   I plead guilty.
>
> COURT:     How do you plead to Count Four of the indictment–
>
> GORDON:   Guilty.
>
> COURT:     –the conspiracy?
>
> GORDON:   Guilty, Your Honor.
>
> COURT:     Are the statements basically correct?
>
> GORDON:   Yes, Your Honor.

The district court found Gordon guilty of counts 1 and 4 and dismissed counts 2
and 3 upon motion of the government.

At Gordon's sentencing hearing, the court first addressed the motion of the government for a downward departure based on substantial assistance. See United States Sentencing Guidelines § 5K1.1 (Nov. 1999). Regarding that motion, the prosecutor stated, "The government believes that to a fairly significant extent Mr. Gordon was telling the truth. We are unsure, however, concerning his statements about giving all of the money to his wife and codefendant, Ann Marie Gordon. He may well have done that." The prosecutor stated that "virtually all of the information related to us was previously known to the government prior to his cooperation," but the prosecutor explained that Gordon "provided us with at least two or three more good leads and good evidence" and the recommended 18-year sentence reflected the amount of cooperation Gordon provided.

The district court overruled Gordon's objections to the presentence investigation report, heard from defense counsel regarding Gordon's motion for downward departure, and asked whether the defense had anything to say before the sentence was imposed. The court did not address Gordon personally or ask him whether he had anything to say. The court adopted the facts in the presentence investigation report and calculated a Guidelines range of 262 to 327 months of imprisonment. The court denied Gordon's motion for downward departure without comment and the motion of the government for the same because "telling the truth

8

to a fairly significant extent is actually another way of saying that it's not completely truthful." The court sentenced Gordon to 262 months in prison for count 1 and 60 months, to be served concurrently, for count 4. No other objections were made. Gordon filed a direct appeal, but that appeal was dismissed in July 2000 on the ground that it was barred by Gordon's sentence-appeal waiver.

In July 2001, Gordon filed a motion to vacate his conviction and sentence. See 28 U.S.C. § 2255. Gordon argued four grounds of ineffective assistance of counsel and that he was denied due process and a right to a fair trial because his drug quantity was found based on a preponderance of the evidence. The district court denied the motion, and found that Gordon knowingly and voluntarily pleaded guilty and had an opportunity to allocute. We granted Gordon a certificate of appealability as to the arguments that Gordon's counsel was ineffective for failing to object that Gordon was not informed of the nature of the charges against him and for failing to object that Gordon was denied his right to allocute.

## II. STANDARD OF REVIEW

A claim of ineffective assistance of counsel is a mixed question of law and fact that we review de novo. Caderno v. United States, 256 F.3d 1213, 1216–17 (11th Cir. 2001).

### III. DISCUSSION

Gordon presents two separate claims of ineffective assistance. First, Gordon argues that his counsel was ineffective for failing to object that the district court did not inform Gordon of the nature of the offenses to which he was pleading. Second, Gordon argues that his counsel was ineffective for failing to object that the district court did not address Gordon personally concerning his right to allocute before sentencing. We examine each of these arguments in turn.

#### A. The Failure of Gordon's Counsel to Object to the Alleged Violation of Rule 11 Did Not Constitute Ineffective Assistance.

To prevail on a claim of ineffective assistance, a defendant must establish two things: (1) "counsel's performance was deficient," meaning it "fell below an objective standard of reasonableness"; and (2) "the deficient performance prejudiced the defendant." Strickland v. Washington, 466 U.S. 668, 687–88, 104 S. Ct. 2052, 2064 (1984). Gordon first argues that his counsel was ineffective for failing to object that Gordon's plea was not knowing or voluntary. To ensure that a plea is voluntary and knowing, Federal Rule of Criminal Procedure 11(b)(1)(G) states that "the court must address the defendant personally in open court" before accepting the plea and "inform the defendant of, and determine that the defendant understands . . . the nature of each charge to which the defendant is pleading." This rule "imposes upon a district court the obligation and responsibility to

10

conduct a searching inquiry into the voluntariness of a defendant's guilty plea." United States v. Siegel, 102 F.3d 477, 481 (11th Cir. 1996). A defendant satisfies the prejudice standard of Strickland by establishing "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59, 106 S. Ct. 366, 370 (1985). Gordon asserts that the district court did not adequately inform him of the nature of the charges and, if it had, he would not have pleaded guilty.

Gordon was initially confused about the relevance of two facts to the crimes with which he was charged: (1) the death of Michelle Goodwin and (2) the obtainment of approximately $1 million in profits from the drug operations. These events played a substantial role in the charges to which Gordon pleaded. The death of Michelle Goodwin was the basis for an enhancement of Gordon's sentence for the conspiracy conviction, 21 U.S.C. § 841(b)(1)(A), and the receipt of "substantial income" was necessary to support the conviction for a continuing criminal enterprise, id. § 848(c)(2)(B). Gordon contends that the district court did not conduct a searching inquiry into his knowledge of the charges; rather, the district court "simply asked Gordon whether he understood the elements of the offenses," an examination that was "conclusory at best."

Gordon does not deny that the prosecutor, in open court, recounted at length both the factual basis of the charges and how Gordon's initial confusion regarding certain facts had been clarified to Gordon's satisfaction in the presence of his counsel. Nor does Gordon deny that, in response to a direct question from the district court, Gordon stated that he understood the nature of the charges against him. Gordon's argument is based on the assumption that Rule 11 is satisfied only when the district judge communicates to the defendant the nature of the charges.

We will assume, for the sake of argument, that a violation of Rule 11 occurs when the district court does not communicate the nature of the charges to the defendant through its own words. Even so, the failure of Gordon's counsel to object did not constitute ineffective assistance. Although it is possible for commission of a single error to amount to ineffective assistance, this circumstance "is clearly the exception and not the rule." Chatom v. White, 858 F.2d 1479, 1485 (11th Cir. 1988). To ground a claim of ineffective assistance, a single error "'must be so substantial as to stamp [counsel's] overall performance with a mark of ineffectiveness.'" Id. (quoting Birt v. Montgomery, 725 F.2d 587, 597 (11th Cir. 1984) (en banc)).

When a claim of ineffective assistance is based on a failure to object to an error committed by the district court, that underlying error must at least satisfy the

12

standard for prejudice that we employ in our review for plain error.  Compare

United States v. Underwood, 446 F.3d 1340, 1343–44 (11th Cir. 2006) (third part

of plain error analysis required defendant to establish "a reasonable probability of a

different result" at sentencing), with Gilliam v. Sec'y, Dep't of Corr., 480 F.3d

1027, 1033 (11th Cir. 2007) (prejudice standard of Strickland requires that there be

"a reasonable probability that, but for counsel's unprofessional errors, the result of

the proceeding would have been different" (internal quotation marks omitted)); see

also United States v. Nash, 438 F.3d 1302, 1304 (11th Cir. 2006).  The failure to

object to a single error that is either unobvious or nonprejudicial does not "stamp

[counsel's] overall performance with a mark of ineffectiveness." Chatom, 858 F.2d

at 1485.  It would be nonsensical if a petitioner, on collateral review, could subject

his challenge of an unobjected-to error to a lesser burden by articulating it as a

claim of ineffective assistance.  Cf. United States v. Caputo, 978 F.2d 972, 975

(7th Cir. 1992) (not every plain error rises to the level of an error that "leaps out at

the reader" or "condemns the lawyer who failed to bring it to the judge's attention

of professional incompetence").

The problem for Gordon is that the alleged error by the district court did not

substantially affect Gordon's rights.  "In evaluating whether a defendant has shown

that his rights were substantially affected or prejudiced" by a violation of Rule 11,

"this Court has examined the three 'core objectives' of Rule 11." United States v. Monroe, 353 F.3d 1346, 1354 (11th Cir. 2003). Those objectives are: "(1) ensuring that the guilty plea is free of coercion; (2) ensuring that the defendant understands the nature of the charges against him; and (3) ensuring that the defendant is aware of the direct consequences of the guilty plea." Id. We have held a violation of Rule 11 to prejudice a defendant only when it "resulted in a total or almost total failure to address" one of these core objectives. Id. at 1355.

Gordon does not contend that his plea colloquy failed to address one of these core objectives. He does not allege that his plea was coerced, he failed to understand the nature of the charges, or he was unaware of the consequences of his plea. Gordon's argument rests on the fact that the district judge did not directly communicate to Gordon the nature of the charges.

The district judge ensured that Gordon understood the nature of the charges. Gordon stated at his plea hearing that his attorney had explained to him the nature of the charges and that he understood them. The prosecutor then recounted how Gordon had been initially confused about the relevance of Michelle Goodwin's death to his plea and had mistakenly believed that the government alleged that he personally possessed $1 million in profits. The prosecutor stated that, after he spoke with Gordon, Gordon was no longer confused. The district court then asked

14

Gordon whether the prosecutor's account was true, and Gordon affirmed that it was. After the prosecutor's statement of the facts, the district court again asked Gordon whether he understood the nature of the charges and whether the prosecutor's statements were correct.

Gordon's rights were not substantially affected by the fact that the district judge did not herself explain the nature of the charges to Gordon, and Gordon's counsel was not ineffective for failing to object. Failing to object to an error that clearly has no effect on a defendant's substantial rights does not constitute ineffective assistance. We affirm the judgment of the district court that denied habeas relief on this ground.

*B. Gordon's Counsel Was Not Ineffective For Failing to Object to the Absence of Inquiry About Gordon's Right to Allocute.*

Gordon's second claim of ineffective assistance rests on the failure of his counsel to object at sentencing to the failure of the district court to address Gordon personally concerning his right to allocute. Federal Rule of Criminal Procedure 32(c) requires that a district court "address the defendant personally and determine if the defendant wishes to make a statement and to present any information in mitigation of the sentence." We have explicitly held that the requirement of Rule 32(c) is not satisfied when the court does not address the defendant personally concerning the defendant's desire to allocute but instead addresses defendant's

15

counsel only.  United States v. Phillips, 936 F.2d 1252, 1255–56 (11th Cir. 1991); see also United States v. Taylor, 11 F.3d 149, 152 (11th Cir. 1994).  Before it pronounced the sentence, the district court asked whether Gordon's counsel wanted to say anything else, but the court did not ask Gordon personally whether he wanted to make a statement.

Gordon raises two challenges to his counsel's failure to object to the absence of inquiry about Gordon's right to allocute.  He first argues that the failure to object to the absence of inquiry amounts to ineffective assistance of counsel per se.  Alternatively, Gordon argues that we should remand the matter for an evidentiary hearing to determine whether his counsel's failure to object amounted to ineffective assistance.  We address each argument in turn.

### 1.  Counsel's Failure to Object to the Absence of Inquiry About Allocution Does Not Amount to Ineffective Assistance Per Se.

Gordon first argues that counsel's failure to object to the absence of inquiry about the right to allocute amounts to ineffective assistance per se.  In United States v. Prouty, we stated that "a defendant cannot easily demonstrate prejudice in the context of allocution" because the impact that an allocution is likely to have on the judge's sentencing discretion "is usually enormously difficult to ascertain." 303 F.3d 1249, 1253 (11th Cir. 2002) (internal quotation mark omitted).  For that reason, we held that a failure to inquire about the right to allocute was to be

16

considered a plain error that required reversal when the defendant had not received the lowest possible sentence under the Guidelines. Id. at 1252.

Gordon argues that the burdens of proof for plain error and ineffective assistance "overlap significantly," such that, when "the first three prongs of the plain error standard" are satisfied, "counsel was incompetent for not having objected." United States v. Smith, 459 F.3d 1276, 1303 (2006) (Tjoflat, J., specially concurring). Gordon maintains that we should adopt a rule that, when a defendant has not received the lowest possible sentence, a failure to object to an absence of inquiry about the defendant's right to allocute amounts to ineffective assistance per se. Because the district court could have granted the motion by the government for a downward departure, Gordon argues that he did not receive the lowest possible sentence and his counsel's failure to object to the absence of inquiry about his right to allocute amounted to ineffective assistance.

For two reasons, we disagree that counsel's failure to object to a plain error amounts to ineffective assistance per se. First, the "deficient performance" standard of an ineffective assistance claim will not always be satisfied by the failure to object to an obvious error. See Caputo, 978 F.2d at 975 (not every plain error "condemns the lawyer who failed to bring it to the judge's attention of professional incompetence"). Counsel may decide, for strategic reasons, not to

17

object to an obvious error. Cf. Michael v. Crosby, 430 F.3d 1310, 1320 (11th Cir. 2005) (courts give great deference to "choices dictated by reasonable trial strategy" when evaluating claims of ineffective assistance). If counsel reasonably believes that correcting the error will actually cause greater harm to his client, perhaps by creating an unfavorable impression of counsel or the defendant in the eyes of the judge or jury, counsel's failure to object would not constitute deficient performance. In the allocution context, counsel is likely to find himself in this situation whenever his client has informed him that he does not intend to allocute and the district judge then fails to ask the defendant whether he wants to allocute. Counsel's decision not to interrupt the proceedings with an objection, when he knows that his client will only reject any later opportunity to allocute, does not constitute deficient performance.

Second, a bare failure to inquire about the right to allocute does not satisfy the "prejudice" standard of an ineffective assistance claim, despite our holding in Prouty. It is true that the "substantial rights" standard of plain error review is identical to the "prejudice" standard of an ineffective assistance claim. Compare Underwood, 446 F.3d at 1343–44, with Gilliam, 480 F.3d at 1033. But this correlation does not mean that we may presume, in a collateral proceeding, as we

18

do in a direct appeal, that a failure to inquire about the right to allocute establishes prejudice.

The Supreme Court has held that the failure to inquire about the right to allocute is not redressable in habeas absent proof that the denial prejudiced the petitioner. In Hill v. United States, the Court held that "the failure to follow the formal requirements of Rule 32(a) [now Rule 32(c)] is not of itself an error that can be raised by collateral attack." 368 U.S. 424, 426, 82 S. Ct. 468, 470 (1962). The Court insisted, in strong terms, that the error is not a fundamental defect:

> The failure of a trial court to ask a defendant represented by an attorney whether he has anything to say before sentence is imposed is not of itself an error of the character or magnitude cognizable under a writ of habeas corpus. It is an error which is neither jurisdictional nor constitutional. It is not a fundamental defect which inherently results in a complete miscarriage of justice, nor an omission inconsistent with the rudimentary demands of fair procedure.

Id. at 428, 82 S. Ct. at 471. More recently, the Supreme Court broadened the application of this principle to "a general rule[] that a court's failure to give a defendant advice required by the Federal Rules is a sufficient basis for collateral relief only when the defendant is prejudiced by the court's error." Peguero v. United States, 526 U.S. 23, 27, 119 S. Ct. 961, 964 (1999). If we held that counsel's failure to object to an absence of inquiry about the right to allocute

19

amounts to ineffective assistance per se, we would run afoul of these holdings of the Supreme Court.

Our holding in <u>Prouty</u> does not allow a defendant to bypass the holdings of <u>Hill</u> and <u>Peguero</u> and collaterally challenge a violation of the formal requirements of Rule 32 by articulating the claim as one of ineffective assistance. Although we presume, in a direct appeal, when the court could have imposed a more lenient sentence, that the absence of inquiry about the right to allocute has prejudiced a defendant, <u>see</u> <u>Prouty</u>, 303 F.3d at 1253, Supreme Court precedents bar us from making that presumption in a collateral proceeding. When an ineffective assistance claim rests entirely on counsel's failure to object to an absence of inquiry about the right to allocute, a defendant must establish actual prejudice based on the denial. There can be no per se rule that counsel's failure to object to a denial of the right to allocute amounts to ineffective assistance.

### 2. Gordon Is Not Entitled to an Evidentiary Hearing Because the Record Conclusively Establishes That Counsel's Performance Was Not Deficient.

Gordon maintains that, if we do not hold the failure to object to the absence of inquiry about the right to allocute to constitute ineffective assistance per se, we should remand this matter to the district court so that it can hold an evidentiary hearing about whether Gordon's counsel rendered ineffective assistance. Gordon

maintains that the only evidence in the record supports the conclusion that there were no strategic reasons behind the failure of his counsel to object to the absence of inquiry about his right to allocute. In an affidavit attached to his habeas motion, Gordon states that, had he been allowed to allocute, he would have told the court he had been entirely truthful with the government. The opinion of the district court that Gordon had not been entirely truthful with the government was the basis for its denial of the motion by the government for a downward departure. Because the district court made no findings as to the Strickland test, Gordon maintains that we should remand the matter so that those findings can be made.

We reject Gordon's argument. An evidentiary hearing is not required whenever a petitioner asserts a claim of ineffective assistance under section 2255. Vick v. United States, 730 F.2d 707, 708 (11th Cir. 1984). An evidentiary hearing is not required when "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255. It is clear from the record that the performance of Gordon's counsel was not deficient, and Gordon is entitled to no relief.

To establish that counsel's performance was deficient, a petitioner must meet a high burden. "There is a strong presumption that counsel's performance was reasonable and adequate." Michael, 430 F.3d at 1320. To overcome that

21

presumption, "a petitioner must establish that no competent counsel would have taken the action that his counsel did take." Chandler v. United States, 218 F.3d 1305, 1315 (11th Cir. 2000) (en banc). Because this standard is objective, id. at 1315 n.15, it matters not whether the challenged actions of counsel were the product of a deliberate strategy or mere oversight. The relevant question is not what actually motivated counsel, but what reasonably could have motivated counsel. See Roe v. Flores-Ortega, 528 U.S. 470, 481, 120 S. Ct. 1029, 1037 (2000) ("The relevant question is not whether counsel's choices were strategic, but whether they were reasonable."); Darden v. Wainwright, 477 U.S. 168, 186, 106 S. Ct. 2464, 2474 (1986) (rejecting a claim of ineffective assistance because "there are several reasons why counsel reasonably could have chosen to rely on a simple plea for mercy from petitioner himself"). "Even if many reasonable lawyers would not have done as defense counsel did at trial, no relief can be granted on ineffectiveness grounds unless it is shown that no reasonable lawyer, in the circumstances, would have done so." Rogers v. Zant, 13 F.3d 384, 386 (11th Cir. 1994).

When we can conceive of a reasonable motivation for counsel's actions, we will deny a claim of ineffective assistance without an evidentiary hearing. In Harich v. Dugger, 813 F.2d 1082 (11th Cir. 1987), a panel of this Court remanded

22

petitioner's claim to the district court for an evidentiary hearing on whether counsel's decision to pursue an actual innocence defense was an informed strategic decision. This Court, sitting en banc, reversed the panel and "conclud[ed]—without [an] evidentiary hearing on whether counsel's strategy arose from his ignorance of [the] law—that trial counsel's performance was competent because hypothetical competent counsel reasonably could have taken [the] action at trial identical to [the action of] actual trial counsel." Chandler, 218 F.3d at 1315 n.16 (summarizing Harich v. Dugger, 844 F.2d 1464, 1470–71 (11th Cir. 1988) (en banc)); see also id. at 1315 (citing favorably United States v. Fortson, 194 F.3d 730, 736 (6th Cir. 1999), which concluded "without district court findings or even [an] evidentiary hearing" that defendant was not entitled to relief because the court could conceive of numerous reasonable motives for counsel's actions).

We can conceive of strategic reasons that Gordon's counsel could have decided not to object to the absence of inquiry about Gordon's right to allocute. Counsel could have been worried, for example, that the manner in which Gordon would make his remarks might lead the court to consider Gordon even less honest than it already considered him. Counsel also could have been concerned that there would be inconsistencies between Gordon's account of his cooperation and

23

previous accounts of that cooperation as described by the government, which might cast further doubt upon Gordon's truthfulness. Anything that might have caused the district court to believe Gordon to be less truthful than it already considered him to be could have led the court to impose a sentence closer to the upper end of the Guidelines range, instead of the lower end where Gordon was sentenced. The existence of a reasonable ground on which Gordon's counsel could have based his failure to object conclusively establishes that Gordon is not entitled to relief, and he was not entitled to an evidentiary hearing.

## IV. CONCLUSION

Gordon's petition is

**DENIED.**