[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-13848
Non-Argument Calendar
_____

D.C. Docket No. 6:11-cv-01080-CEH-GJK

CEDRICK S. BARRINER,

Petitioner-Appellee,

versus

SECRETARY, DEPARTMENT OF CORRECTIONS,
ATTORNEY GENERAL, STATE OF FLORIDA,

Respondents-Appellants.

_____

Appeals from the United States District Court
for the Middle District of Florida
_____

(March 4, 2015)

Before ED CARNES, Chief Judge, TJOFLAT and ROSENBAUM, Circuit Judges.

PER CURIAM:

The State of Florida appeals the portion of the district court's judgment granting 28 U.S.C. § 2254 relief to Florida prisoner Cedrick Barriner based on his claim that he was denied effective assistance of counsel at his criminal trial.

I.

On June 13, 2009, the Sanford Police Department responded to a report of an armed home invasion at the home of Terri Patrick. In his 911 call, Patrick said that he and his friend Antonio Jones had barricaded themselves in a bedroom because several armed men had broken into the house. When the first officer arrived on the scene, he noticed a tall man leaving the residence with several items in his hands. The officer attempted to arrest the suspect, but he fled and outran the officer. The suspect did, however, drop the items he had been holding — a car stereo and two handguns. In the meantime, more officers arrived and moved to secure the inside of the home. One of the front door's panels was kicked in, so when the officers approached the house they could see a man standing inside. That man was Cedrick Barriner. They instructed Barriner to exit the house with his hands in the air, and he did. They arrested him, patted him down, and found a bullet in one of his pockets. When they searched the home, they found, among other things, mail packaging with marijuana residue on it, a black handgun in a closet, and a bullet next to the handgun.

2

The State brought two criminal charges against Barriner. The first was for armed burglary of an occupied dwelling with an assault. See Fla. Stat. Ann. § 810.02(2)(a), (b) (West 2009). The second was for being a convicted felon in possession of ammunition. See id. § 790.23(1). On the first day of trial, the court granted Barriner's motion to sever the counts, and the case proceeded to trial on the armed burglary charge alone. The State relied on testimony from Jones, Patrick, and the officers who responded to the 911 call. Those witnesses testified to the facts we have already recounted. Barriner's defense strategy was to argue that he was innocent of any crime, and he took the stand to give his account of that night's events. According to Barriner, Jones had invited him inside, and they had smoked marijuana. Barriner said he had given Jones $500 for a pound of marijuana earlier that day,[1] and when he asked about it, Jones said that he could not get any. Barriner then stood up to fight him, and Jones ran back to the bedroom and locked himself inside. Barriner followed Jones, knocked on the door, started "talking trash," and demanded that Jones give him his marijuana. Just as he was starting to leave, the police arrived. When cross-examined by the prosecutor about the bullet in his pocket, Barriner explained that he had picked it up as he was leaving the house.

---

[1] When Jones was cross-examined by defense counsel, he denied that Barriner had paid him $500 for marijuana.

3

At the close of evidence, the trial court's instructions to the jury included an explanation of the charged offense, which was armed burglary of an occupied dwelling with an assault, as well as explanations of all the lesser included offenses whose elements were alleged in the information and supported by evidence at trial. See State v. Weller, 590 So. 2d 923, 926 (Fla. 1991) ("[Florida] law requires that an instruction be given for any lesser offense all the elements of which are alleged in the accusatory pleadings and supported by the evidence adduced at trial."). The court's instructions thus gave the jurors three general options.

The first option was to find Barriner guilty as charged in the information. The court told them that they must return that verdict if they found all of the elements for an armed burglary of an occupied dwelling with an assault.

If the jurors could not conclude that he was guilty as charged in the information, the second option was to find Barriner guilty of "other acts that would constitute a lesser included offense." The lesser included offenses were: (1) armed burglary of a structure, (2) burglary of a structure with an assault, (3) burglary of an unoccupied dwelling, (4) burglary of an occupied structure, (5) burglary of an unoccupied structure, (6) trespass of a structure, and (7) assault. The court told the jurors that they had to pick the verdict that reflected the "highest offense which has been proven beyond a reasonable doubt."

4

The third option was to find Barriner not guilty. The court further instructed the jurors that "[o]nly one verdict may be returned as to the crime charged," and that when they marked the verdict forms, the jurors were "to place an X on the one line that represents the jury's verdict." Neither side objected to those instructions.

During its deliberations, the jury sent the trial judge a note. It read: "Dear Judge, is the[re] a Florida statute that encompasses both an Assault and Tre[s]pass?" With the jury outside the courtroom, the trial judge read the note to the attorneys. The prosecutor replied, "I think the answer is no." Defense counsel did not dispute that answer, saying: "They have to agree, Your Honor."[2] Defense counsel did not ask for time to research the issue before giving his answer. The court then called the jurors into the courtroom and told them: "The answer to your question is no." After a short deliberation, the jury found Barriner guilty of the lesser included offense of burglary of an unoccupied dwelling, in violation of Florida Statute section 810.02(3)(b). The court then entered judgment on the verdict.

The next day, the trial judge received a letter from one of the jurors. The letter stated that the jurors had been deadlocked, with three jurors believing Barriner was guilty as charged and three jurors believing he was guilty of only

---

[2] In context, defense counsel's answer to the question, that the jurors "have to agree," is implicitly agreeing that there is no statute and stressing the notion that the jury has to pick either assault or trespass instead of both. In other words, the jurors were required to agree on the one "highest offense that ha[d] been proven beyond a reasonable doubt," as the trial court had instructed.

assault. It went on to explain that the jurors had submitted the question to the judge in the hope that they could reach a compromise by finding Barriner guilty under a statute that criminalized assault and trespass. When the judge told them there was no such statute, the jurors struck a different compromise by finding Barriner guilty of burglary of an unoccupied dwelling. The letter asserted that "all of the Jurors present had agreed that the Defendant should not serve more than 2 to 5 years in prison," and that they had picked burglary of an unoccupied dwelling because they thought it would result in such a sentence. The letter then explained that its author (who happened to be a lawyer) was dismayed when he returned home, looked up Florida Statute section 810.02(3)(b), and realized that it authorized a sentence far higher than he and the other jurors had intended. Defense counsel filed a motion to interview the juror, but the trial court denied it.

Having been found guilty in his trial on Count One, Barriner chose to plead guilty to Count Two, which had been severed. The trial court determined that, with those two convictions, Barriner qualified as a habitual felony offender under Florida Statute section 775.084(1)(a). It then sentenced him to twenty years in prison, giving him concurrent sentences of twenty years for each count of conviction.

6

II.

Barriner challenged his conviction on direct appeal and failed.  He then filed a motion in state court for post-conviction relief.  One of the challenges he raised was a Sixth Amendment claim based on his trial counsel's (1) failure to conduct legal research on the question that the jury raised during deliberations and (2) decision to answer "no" to the jury's question.[3]  He argued that counsel should have instead asked the judge to clarify that the jurors could convict him of multiple lesser included offenses, and that counsel's failure to do so "denied the jury their right to exercise [their] pardon power."  To bolster his argument on the prejudice prong, Barriner attached the juror's letter to the trial judge.  Barriner argued that the letter established that he was prejudiced because it showed there was a reasonable probability that, if the jury had been instructed that it was possible to convict him of both assault and trespass, it would have convicted him of those two lesser included offenses and not the lesser included offense of burglary of an unoccupied dwelling.

The state trial court denied Barriner's motion for post-conviction relief.  As for his Sixth Amendment challenge, the court concluded that Barriner's claim failed under the two-prong test established in Strickland v. Washington, 466 U.S. 668, 687–88, 104 S. Ct. 2052, 2064 (1984) (requiring defendants to show that trial

---

[3] Barriner's other challenges on direct appeal are not at issue in this appeal, so we need not describe them.

7

counsel's representation was objectively unreasonable under the circumstances and prejudicial to their defense).  The court assumed that Barriner had met the first prong, acknowledging that he "may have made a preliminary showing" of deficient performance.  The court pointed out that, while counsel had been "accurate" in answering that "there was no statute that encompassed both trespass and assault," counsel nevertheless "could have referenced [Florida case law] and requested a jury instruction that the Defendant could instead be found guilty of both trespass and assault."  See Stuckey v. State, 972 So. 2d 918, 921 (Fla. 5th DCA 2007) ("[A] jury can convict a defendant of one or more of the lesser included offenses . . . .").  But when the state court turned to Strickland's second prong, it concluded that Barriner had not established prejudice.  The court reasoned that "it would be mere speculation as to whether the inclusion of the lesser included offenses would have resulted in a different verdict" and in any event Strickland forbids a finding of prejudice based on "the 'luck of a lawless decision maker.'"  See Strickland, 466 U.S. at 695, 104 S. Ct. at 2068.  The Florida district court of appeals affirmed the circuit court's decision in a one-line per curiam decision, and Barriner did not petition for review by the Florida Supreme Court.

Barriner then filed a petition for a writ of federal habeas corpus under 28 U.S.C. § 2254.  The district court determined that the state court's denial of Barriner's ineffective assistance claim, though on the merits, was not entitled to the

8

deference normally afforded to state court decisions under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). See 28 U.S.C. § 2254(d). The district court withheld AEDPA deference on two grounds. First, it asserted that the state court had unreasonably applied clearly established federal law by using a prejudice standard that was more demanding than Strickland's. See id. § 2254(d)(1). Second, it determined that the state court had made an unreasonable determination of the facts by mischaracterizing Barriner's claim as "predicated upon the contention that the jury was not instructed [at all] on the lesser included offenses of assault and trespass." See id. § 2254(d)(2). The district court pointed out that the record showed that the jury had been instructed on those two lesser included offenses, and that Barriner's claim was based on the argument that the jurors should have been instructed that they had the option to find him guilty of both of those offenses. The district court then reviewed Barriner's claim de novo and concluded that his right to effective assistance of counsel was violated. This is the State's appeal.

## III.

To succeed on an ineffective assistance of counsel claim, a petitioner must establish both deficient performance and prejudice. See Strickland, 466 U.S. at 687–88, 104 S. Ct. at 2064. We need not decide whether the district court was correct in its determination that AEDPA deference does not apply to Barriner's

9

ineffectiveness claim.  See 28 U.S.C. § 2254(d).  Even under de novo review, he has not established that his counsel's performance was deficient.[4]  Cf. Allen v. Sec'y, Fla. Dep't of Corr., 611 F.3d 740, 753 (11th Cir. 2010) ("[E]ven if no deference were due the state collateral trial court's decision on [Strickland's] performance element, we would conclude on de novo review that [the petitioner] had failed to establish it.").

To establish deficient performance, Barriner "must show that counsel's representation fell below an objective standard of reasonableness."  Strickland, 466 U.S. at 688, 104 S. Ct. at 2064.  That "test has nothing to do with what the best lawyers would have done.  Nor is the test even what most good lawyers would have done.  We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial."  Waters v. Thomas, 46 F.3d 1506, 1512 (11th Cir. 1995) (en banc) (quotation marks omitted).  In other words, Barriner "must establish that no competent counsel would have taken the action that his counsel did take."  Chandler v. United States, 218 F.3d 1305, 1315

---

[4] Because trial counsel's performance was not deficient, we need not fully address the prejudice prong of Strickland.  See Cox v. McNeil, 638 F.3d 1356, 1362 (11th Cir. 2011).  The fact that we do not should not, however, be interpreted as a sign that we believe Barriner's theory of prejudice has merit.  Like all petitioners, Barriner has the burden of establishing prejudice.  See Johnson v. Alabama, 256 F.3d 1156, 1176 (11th Cir. 2001).  We are not aware of any law or facts indicating that the trial judge would have, or under state law correctly could have, answered the jury's question any way other than the way he did.  No one has pointed to any Florida statute that criminalizes both assault and trespass. The jury asked if there is one, and the judge's answer that there is not was correct.

(11th Cir. 2000) (en banc).  That test "calls for an objective inquiry."  Castillo v.

Florida, Sec'y of DOC, 722 F.3d 1281, 1285 n.2 (11th Cir. 2013).  Here, that

means asking "whether any reasonable lawyer could have elected not to object for

strategic or tactical reasons," not whether "the actual defense counsel was . . .

subjectively motivated by those reasons."  Id.  Though the test is an objective one,

it "evaluate[s] the conduct from counsel's perspective at the time."  Strickland, 466

U.S. at 689, 104 S. Ct. at 2065.  Courts therefore must resist the urge to second-

guess trial counsel's decision using the benefit of hindsight.  See Walters, 46 F.3d

at 1514 (collecting cases).

Here, counsel's performance fell "within the wide range of reasonable

professional assistance."  Strickland, 466 U.S. at 689, 104 S. Ct. at 2065.  Both

attorneys stood before the trial judge faced with this legal question from the jury:

"[I]s there a Florida statute that encompasses both assault and trespass?"  The

prosecutor correctly answered "no."  Defense counsel agreed.  As the state trial

court acknowledged in Barriner's state post-conviction proceeding, that was the

correct answer to the jury's question.  Agreeing with an accurate answer to a pure

question of law is not deficient performance under Strickland.[5]

---

[5] The district court asserted that counsel performed deficiently by answering the jury's question before he had "researched Florida law to ascertain whether the jury could find Petitioner guilty of both trespass and assault."  To be sure, Strickland did establish that trial counsel has a general duty to make a "thorough investigation of law and facts."  466 U.S. at 690, 104 S. Ct. at 2066.  But it was speaking of investigation before the trial begins.  See id. at 680–81, 104 S. Ct. at 2060–61.  We are not aware of any decision from this Court or any other that extends

11

Furthermore, even if defense counsel acquiesced in an erroneous jury instruction, there was a sound strategic reason to do so.  See Gordon v. United States, 518 F.3d 1291, 1300 (11th Cir. 2008) ("Counsel may decide, for strategic reasons, not to object to an obvious error.").  Counsel could have made the logical inference, based on the jury question, that the jurors had decided that Barriner was guilty of assault and trespass, and they wanted to know if there was a statute that would allow them to convict him of both of the crimes that they specified in their question or they instead were required to pick one of the two.  So the circumstances at that time reasonably could have been interpreted as indicating that Barriner was facing the possibility of being convicted of either:  (1) just trespass of a structure, (2) just assault, or (3) both trespass and assault.  Faced with those options, counsel's answer was a reasonable strategic choice.  A reasonable, competent lawyer could have concluded that the answer would result in Barriner being convicted of just one lesser included offense instead of two.  That would have been the better result for Barriner because a conviction for both trespass and

Strickland so far as to require defense counsel, when faced with a jury question presenting a purely legal issue, to request additional time for legal research before offering an answer to the trial judge.  Because of the need to answer the jury's question promptly, most trial courts handle jury questions the same way that the state court did here:  call the attorneys in, show them the question, get their thoughts, reach a conclusion, call the jurors in, and give them the answer.  Most if not all counsel would have offered an immediate answer when presented with a jury question like this one.  Cf. Bates v. Sec'y, Fla. Dep't of Corr., 768 F.3d 1278, 1295 (11th Cir. 2014) (noting that good lawyers "know[] that judges and juries have limited time and limited patience" and act accordingly).  It was not deficient performance for counsel here to take the same approach that many other lawyers would have taken.

assault obviously carries the potential for a longer sentence than a conviction for just one of those offenses.  It follows that counsel reasonably could have interpreted the question in a way that would have made a "no" answer the best one for his client.  It matters not whether Barriner's trial counsel actually did.  See Castillo, 722 F.3d at 1285 n.2.

Given the circumstances, there was no reason for counsel to think that a negative answer would increase the risk of Barriner being convicted of burglary of an unoccupied dwelling.  Under Florida law, burglary of an unoccupied dwelling requires, among other things, an entry with the "intent to commit an offense therein."  Fla. Stat. Ann. § 810.02(1)(b), (3)(b) (West 2009).  Neither trespass of a structure nor assault contains that entry-with-intent element.  See id. §§ 784.011, 810.08.  In fact, that entry-with-intent element is the crucial difference between burglary and trespass of a structure.  Compare id. § 810.02(1)(b) (including the element), with id. § 810.08 (omitting it).  So the fact that the jury's question included the trespass-of-a-structure offense and omitted any burglary offense implied that the jurors had eliminated burglary as a possibility.  Many "competent counsel" would have drawn that inference.  See Chandler, 218 F.3d at 1315.  By contrast, there was nothing in the jury's question to suggest (as the lawyer-juror's letter eventually would) that the jurors had disregarded their oaths and decided to base their verdict on what they thought the proper sentence should be.  Cf. Sanders

13

v. State, 946 So. 2d 953, 958 (Fla. 2006) (explaining that Florida jurors violate their oaths and the court's instruction if they choose their verdict based on the sentence length and not the evidence).  Even if it might seem likely in hindsight that the jurors would settle on an offense other than one listed in their question, Strickland's test forbids that kind of second-guessing.  See Walters, 46 F.3d at 1514.

     **REVERSED.**