[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-13028
Non-Argument Calendar
_____

D.C. Docket Nos. 1:13-cv-00209-WTH-GRJ,
1:08-cr-00023-WTH-GRJ-1

TIMOTHY ROBERT TREFFINGER,

Petitioner-Appellant,

versus

UNITED STATES OF AMERICA,

Respondent-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Florida
_____

(January 6, 2020)

Before BRANCH, GRANT, and JULIE CARNES, Circuit Judges.

PER CURIAM:

Timothy Robert Treffinger appeals the district court's denial of his

28 U.S.C. § 2255 motion to vacate his 426-month sentence, imposed after a jury

convicted him of: one count of manufacturing and possessing with intent to distribute more than 100 marijuana plants, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B)(vii); one count of possession of a destructive device and firearm silencer in furtherance of a drug-trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(B)(ii); one count of possession and making destructive devices not registered in the National Firearms Registration and Transfer Record, in violation of 26 U.S.C. §§ 53, 5845, 5681(f), and 5871; and one count of possession of a firearm not registered in the National Firearms Registration and Transfer Record, in violation of 26 U.S.C. §§ 53, 5845(a), 5861(d), and 5871. As detailed further, we granted a certificate of appealability to consider Treffinger's arguments that his trial counsel rendered constitutionally ineffective representation by failing to seek suppression of certain evidence. After careful consideration, we now affirm.

## I. Background

Treffinger was indicted in 2008 on the above charges based on evidence uncovered after he consented to a search of his rural property. At trial, the evidence showed that officers from the Drug Enforcement Administration ("DEA") and Florida's Alachua County Sheriff's Office ("ACSO") went to Treffinger's property on a tip that a marijuana grow operation was being conducted on the property. The tip came from a confidential source who was involved with the grow operation, and this individual also indicated that Treffinger "was

2

dangerous and had dangerous types of weapons." In response to the tip, DEA Special Agent Wayne Andrews and other law enforcement agents obtained permission to enter the adjacent parcel of land to Treffinger's address, which allowed the officers to get within 10 to 15 feet of several outbuildings on Treffinger's property. From this location, Agent Andrews could smell the distinct, pungent odor of flowering marijuana plants and hear the hum typical of indoor marijuana grow operations. Agent Andrews testified that his observations served to confirm the credibility of the tip, and three of the agents then entered Treffinger's property through a gate at the front of the property that was ajar in an attempt to contact the residents of the home. The officers rang the doorbell, knocked on the door, and walked around the back of the home, but no one answered. Treffinger's girlfriend, Josephine Burns, was inside the home with their six-year-old son, and called 911. She eventually opened the door, spoke to the agents who were outside, and informed them that Treffinger was not home. She then called Treffinger. Agent Andrews spoke with him, explained why the police were there, and asked him to return home. Treffinger agreed.

When Treffinger arrived at the property, he was asked to place his hands where officers could see them and to step out of the vehicle. An ACSO deputy patted him down for safety, explained that Treffinger was not under arrest and that they just wanted to talk to him at that time, and then walked him up the driveway

3

to meet Agent Andrews, who was waiting outside the house.  The ASCO deputy testified that he walked Treffinger up the driveway alone, and that Treffinger appeared calm and cooperative and seemed to be "very alert and to understand what was going on."  The deputy testified that although the agents were armed, at no time did they draw their weapons on Treffinger.

Agent Andrews advised Treffinger of his *Miranda* rights and reviewed with Treffinger the information that the officers had, which Agent Andrews explained was enough to apply for a search warrant. He then advised Treffinger that he could cooperate and consent to a search, or the agents would apply for a warrant. Treffinger asked the agents to take his child into consideration, and Agent Andrews agreed to try to minimize the child's exposure to law enforcement. Thereafter, Treffinger signed a consent-to-search form, which was also verbally explained to him.  He then physically accompanied the agents around the property, providing keys to the various buildings and trailers on his property, instructing officers as to which key went to which structure, explaining to officers what they would find inside each structure, and opening a gun safe in his residence.[1]  Agent Andrews testified that Treffinger was calm, alert, very cooperative, and respectful. Agent Andrews stated that at no time were weapons drawn on Treffinger and that the police never threatened to arrest Burns or made any threats or coercion toward

---

[1] A video of the search was admitted into evidence and played for the jury.

4

Treffinger.  Treffinger admitted to Agent Andrews that it was his grow operation

and that he had made the pipe bombs found in his gun safe; he never stated that

anyone else was involved.  The jury found Treffinger guilty of the charges.  After

his initial sentencing and an appeal to this Court, *United States v. Treffinger*, 464

F. App'x 777 (11th Cir. 2012), Treffinger was resentenced to a 426-month term of

imprisonment.[2]

On October 21, 2013, Treffinger filed his § 2255 motion, arguing that he

received constitutionally ineffective assistance of counsel because his counsel

failed to seek suppression of the evidence obtained from the search of his property

based on an argument that (1) law enforcement entered the curtilage of his home in

violation of the Fourth Amendment, and (2) his consent to search was involuntary.

Specifically, Treffinger asserted that his property was in a densely wooded area,

had five-foot high barbed wire fence around it with gated entrances, and "no

trespassing" and "beware of dog" signs.  He maintained that (1) when officers

opened the gate and walked up the driveway, they illegally entered the curtilage of

his home in violation of the Fourth Amendment, (2) the knock-and-talk rule did

not apply, and (3) that his trial counsel should have sought to suppress the evidence

---

[2] On direct appeal, we vacated Treffinger's sentence for possession of firearms in furtherance of a drug-trafficking crime (Count 2), concluding that he could not be sentenced for both Count 2 and Count 3 (possession of a destructive device and firearm silencer in furtherance of a drug-trafficking crime) because both counts were based on a single drug-trafficking crime. *Treffinger*, 464 F. App'x at 779–80.  Accordingly, we vacated Count 2 and remanded for resentencing.  *Id.*

on these grounds.  He also argued that counsel should have sought to suppress the evidence because Treffinger's consent to search was not voluntary.  In support of this claim, Treffinger argued that he was not free to leave when he gave consent, the officer's presence on his property was coercive, and his ability to refuse consent was overborne by coercive circumstances.

At the subsequent evidentiary hearing, Treffinger's trial counsel testified that after exploring the possibility of a motion to suppress and having his investigator (a former law enforcement officer) investigate the knock-and-talk procedure used in this case, "it became evident that there was some serious separation between" what Treffinger had told him about "what occurred and what was present in the discovery in terms of who did what, what kind of pressure was there on him."  Counsel stated that he considered the curtilage issue, but based upon the evidence—the informant's tip, and the officers' testimony that they heard the hum of what they believed to be grow equipment, as well as smelled the odor of marijuana—he believed the officers had probable cause to conduct a knock and talk.

Counsel also stated that Treffinger brought up the potential for filing a motion to suppress based on the involuntariness of his consent.  Treffinger told his counsel that he was under duress when he gave consent based on law enforcement drawing their weapons, pointing guns in his face, and threatening to keep his

6

family out all night long and to press charges against Burns.  However, during discovery, counsel inquired as to whether guns were drawn, and the police denied Treffinger's assertion.  Additionally, counsel testified that in the video of the search Treffinger appeared fully comfortable, cooperative and engaged with law enforcement, acting almost as a "tour guide," which also impacted counsel's decision not to file a motion to suppress.

Counsel further stated that he was concerned about wading into credibility determinations to resolve the significant factual disputes between Treffinger and law enforcement because Treffinger was going to testify at trial, and counsel believed that filing a motion to suppress would open the door to "some pretty nasty facts" and potential prejudicial impeachment evidence regarding past instances of domestic violence and threats with guns.  Based on that consideration and his experience with knock-and-talk cases, counsel decided not to file a motion to suppress because he believed it was not in Treffinger's best interest and would undermine Treffinger's defense at trial.

After the evidentiary hearing, the magistrate judge issued a report and recommendation ("R&R"), recommending that Treffinger's § 2255 motion be denied.  The magistrate judge found that Treffinger was not a credible witness and that trial counsel's testimony was credible.  The magistrate judge determined that law enforcement's entry onto the curtilage of Treffinger's property was not

7

improper, and that even if it had been, Treffinger had not shown that his

subsequent consent was involuntary.  The district court entered an order adopting

the R&R and denying Treffinger's § 2255 motion over Treffinger's objections.

Treffinger appealed and moved for a certificate of appealability.  A judge of

this Court granted him a certificate of appealability on the two issues before us:

> Whether trial counsel was constitutionally ineffective in failing to
> seek suppression of the evidence obtained from a search of
> Treffinger's home, based on an argument that law enforcement
> entered the curtilage of the home in violation of the Fourth
> Amendment.

> Whether trial counsel was constitutionally ineffective in failing to
> seek suppression of the evidence obtained from a search of
> Treffinger's home, based on an argument that Treffinger's consent to
> search was involuntary and tainted by law enforcement's illegal entry
> onto the curtilage of his home, in violation of the Fourth Amendment.

## II.  Standards of Review

In reviewing the denial of a motion to vacate filed pursuant to § 2255, we

review legal conclusions *de novo* and findings of fact for clear error.  *Spencer v.*

*United States*, 773 F.3d 1132, 1137 (11th Cir. 2014) (*en banc*).  Whether trial

counsel was ineffective is a mixed question of law and fact that is reviewed *de*

*novo*.  *Payne v. United States*, 566 F.3d 1276, 1277 (11th Cir. 2009).

## III.  Discussion

Treffinger argues that his trial counsel was constitutionally ineffective in

failing to seek suppression of the evidence obtained from the search of his home on

8

the grounds that (1) law enforcement violated the Fourth Amendment when they entered the curtilage of his home to conduct a knock and talk; and (2) Treffinger's consent to search was involuntary and otherwise tainted by the officers' illegal entry onto the curtilage of his home.

To succeed on a claim of ineffective assistance of counsel, a defendant bears the burden to prove both that his counsel's performance was deficient and that "the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Failure to establish either prong is fatal and makes it unnecessary to consider the other. *Id.* at 697.

In order to prove the deficient performance prong of the *Strickland* test, the movant must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. "Judicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* In conducting our review, we "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* Thus, in order to overcome the presumption of competent representation, "a petitioner must establish that no

9

competent counsel would have taken the action that his counsel did take." *Gordon v. United States*, 518 F.3d 1291, 1301 (11th Cir. 2008) (quoting *Chandler v. United States*, 218 F.3d 1305, 1315 (11th Cir. 2000) (*en banc*)); *see also Dingle v. Sec'y for Dep't of Corr.*, 480 F.3d 1092, 1099 (11th Cir. 2007) (explaining that counsel's strategic decision "will be held to have been ineffective assistance only if it was 'so patently unreasonable that no competent attorney would have chosen it'" (quoting *Adams v. Wainwright*, 709 F.2d 1443, 1445 (11th Cir. 1983))).

The prejudice prong of the *Strickland* test requires the movant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Moreover, where, as here, a movant's ineffective-assistance claim is based on counsel's failure to file a motion to suppress, in order to show prejudice, the movant must prove that the "Fourth Amendment claim is meritorious" and "that there is a reasonable probability that the verdict would have been different absent the excludable evidence." *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986); *see also Castillo v. United States*, 816 F.3d 1300, 1303 (11th Cir. 2016).

The Fourth Amendment protects people from unreasonable searches of their persons, houses, papers, and effects. U.S. Const. amend. IV; *Oliver v. United States*, 466 U.S. 170, 176 (1984). The area "immediately surrounding and associated with the home" is defined as the curtilage and is "considered part of

10

[the] home itself for Fourth Amendment purposes." *Oliver*, 466 U.S. at 180; *see also Florida v. Jardines*, 569 U.S. 1, 6–7 (2013). "Because the curtilage is a constitutionally protected space, the police must have an express or implied license to be there without a warrant." *United States v. Maxi*, 886 F.3d 1318, 1326 (11th Cir. 2018). One such implied license extended to police is the "knock and talk" rule. *See Jardines*, 569 U.S. at 21.

> The "knock and talk" rule provides that police have an owner's implied permission to "approach a home and knock, precisely because that is no more than any private citizen might do." This license, "implied from the habits of the country. . . . typically permits the visitor to approach the home by the front path, knock promptly, wait briefly to be received, and then (absent invitation to linger longer) leave."

*Maxi*, 886 F.3d at 1326–27 (quoting *Jardines*, 569 U.S. at 8). "[T]he scope of the knock and talk exception is limited in two respects." *United States v. Walker*, 799 F.3d 1361, 1363 (11th Cir. 2015). "First, it ceases where an officer's behavior 'objectively reveals a purpose to conduct a search.'" *Id.* (quoting *Jardines*, 569 U.S. at 10). "Second, the exception is geographically limited to the front door or a 'minor departure' from it." *Id.* (quoting *Taylor*, 458 F.3d at 1205).

With regard to a warrantless search conducted pursuant to a person's consent, the government bears the burden of proving that "the consent was . . . freely and voluntarily given." *Schneckloth v. Bustamonte*, 412 U.S. 218, 222 (1973) (quoting *Bumper v. North Carolina*, 391 U.S. 543, 548 (1968)).

11

"[W]hether a consent to a search was in fact 'voluntary' or was the product of duress or coercion, express or implied, is a question of fact to be determined from the totality of all the circumstances." *Id.* at 227.  Some factors to be considered in the totality of the circumstances are whether the defendant was free to leave, the existence of coercive police procedures, the extent of the defendant's cooperation or awareness of a right to refuse consent, the ability of the defendant to refuse consent, the extent of the defendant's education and intelligence, and whether the defendant believed that no incriminating evidence would be found.  *United States v. Ramirez-Chilel*, 289 F.3d 744, 752 (11th Cir. 2002).

Treffinger argues that his trial counsel should have sought to suppress the evidence seized from the search of his home because the police unlawfully entered the curtilage of his home when they opened the front gate and walked up the driveway to conduct a knock and talk.  He contends that the five-foot high fence with barbed wire, gated entrance, and the "No Trespassing" sign and "Beware of Dog" sign clearly established that private citizens were not allowed on his property, and, therefore, the police were also not allowed on the property to conduct a knock and talk because under that rule officers can do no more than a private citizen might do.

Treffinger has not shown that his trial counsel rendered constitutionally deficient performance by failing to file a motion to suppress based on the curtilage

12

argument.  Counsel testified at the evidentiary hearing that he considered filing a motion to suppress based on the curtilage issue but, based on the circumstances and counsel's experience with knock-and-talk cases, he believed that the officers had probable cause to conduct a knock and talk.  Moreover, counsel testified that he did not believe filing a motion to suppress would be in Treffinger's best interest in light of the potential that Treffinger's testimony at the suppression hearing could be used against him at trial and undermine his defense and credibility.  Treffinger has not shown that counsel's decision was "patently unreasonable" or that "no competent counsel would have taken the action that his counsel did take." *See Dingle*, 480 F.3d at 1099; *see also Gordon*, 518 F.3d at 1301.  Thus, Treffinger failed to establish deficient performance.  Accordingly, his ineffective-assistance claim fails.  *Kimmelman*, 477 U.S. at 375.

Similarly, Treffinger has not demonstrated that his counsel rendered constitutionally deficient performance in failing to seek suppression of the evidence on the ground that Treffinger's consent to search was involuntary and otherwise tainted by law enforcement's purportedly illegal entry onto the curtilage of his home.  As with the curtilage issue, Treffinger's counsel testified that he considered filing a motion to suppress based on Treffinger's assertion that his consent was the product of duress and coercion.  However, upon investigation, counsel discovered that Treffinger's version of events differed significantly from

13

that of the officers' and that there was no evidence to support Treffinger's assertions. Indeed, the recording of the search, in which Treffinger resembled a "tour guide" and appeared relaxed and calm, undermined Treffinger's assertion. Thus, counsel explained that based on those considerations and his concern that litigating a motion to suppress could have adverse consequences to Treffinger's defense at trial, he decided not to file a motion to suppress. In light of these circumstances, Treffinger failed to show that counsel's decision was "patently unreasonable," *Dingle*, 480 F.3d at 1099, or that "no competent counsel would have taken the action that his counsel did take." *Gordon*, 518 F.3d at 1301.

Finally, even assuming, *arguendo*, that law enforcement's conduct in conducting the knock-and-talk violated the Fourth Amendment, a competent attorney could have elected not to file a suppression motion challenging the validity of Treffinger's consent after determining, as Treffinger's counsel did, that litigating a suppression motion would have had adverse effects. *See Gordon*, 518 F.3d at 1301 (analyzing counsel's decision in light of "what *reasonably* could have motivated" the decision (emphasis added)). Accordingly, because Treffinger's counsel's performance was not constitutionally deficient, we conclude the district court properly denied Treffinger's § 2255 motion.

**AFFIRMED.**

14