# Syllabus

Chief Justice:
Stephen J. Markman

Justices:
Brian K. Zahra
Bridget M. McCormack
David F. Viviano
Richard H. Bernstein
Kurtis T. Wilder
Elizabeth T. Clement

This syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader.

Reporter of Decisions:
Kathryn L. Loomis

## PEOPLE v RANDOLPH

Docket No. 153309. Argued on application for leave to appeal November 7, 2017. Decided June 15, 2018.

Andrew M. Randolph was convicted after a jury trial in the Genesee Circuit Court, Geoffrey L. Neithercut, J., of second-degree murder, MCL 750.317; discharging a firearm into a building, MCL 750.234b; being a felon in possession of a firearm, MCL 750.224f; and possessing a firearm during the commission of a felony, MCL 750.227b, in connection with the fatal shooting of Vena Fant, his girlfriend's mother. The night before the shooting, defendant had fought with his girlfriend and packed his belongings into bags before departing. Fant then brought these bags to the home of defendant's father, Alphonso Taylor. After the shooting, without a search warrant, the police obtained Taylor's consent to search the bags, which contained several rounds of ammunition. An arrest warrant was later issued and executed on defendant at his brother's apartment, where a search revealed a handgun linked to the killing. At trial, the prosecution's case relied in part on testimony about threats defendant had made to the victim's family on the day of the shooting and evidence of the ammunition and gun found during the investigation. Regarding the threats, Linda Wilkerson, the sister of Fant's fiancé, testified that Fant said that defendant had been calling throughout the day and threatening to kill the family. Defense counsel did not object to this testimony, nor did he object to the admission of the ammunition and gun as evidence. Defendant appealed his convictions, arguing that his counsel had been ineffective, and the Court of Appeals remanded the case to the trial court for a hearing pursuant to *People v Ginther*, 390 Mich 436 (1973). At the hearing, defendant's father, Taylor, testified that he had not touched defendant's bags or received defendant's permission to open them and that when the police searched the bags, they never asked whether Taylor had permission to go through them. Trial counsel admitted that he had no strategic reason for failing to file a motion to suppress the ammunition found at Taylor's house. After the hearing, the trial court rejected defendant's ineffective-assistance claim, ruling that counsel's performance was not deficient and that, in any case, defendant was not prejudiced. Defendant appealed on this basis and also on the basis of the unpreserved alleged errors by the trial court relating to the admission of evidence. The Court of Appeals, SAWYER, P.J., and K. F. KELLY and FORT HOOD, JJ., affirmed in an unpublished per curiam opinion issued November 24, 2015 (Docket No. 321551), holding in part that defendant could not establish his ineffective-assistance claim because he had not established that plain error had occurred. The Supreme Court ordered and heard oral argument on whether to grant the application for leave to appeal or take other peremptory action. 500 Mich 999 (2017).

In a unanimous opinion by Justice VIVIANO, the Supreme Court, in lieu of granting leave to appeal, *held*:

A defendant's inability to establish that the trial court committed a plain error does not necessarily preclude the defendant from establishing the ineffective assistance of counsel on the basis of that same error. The standards for establishing plain error by the trial court and ineffective assistance of trial counsel have separate legal elements that focus on different facts. Accordingly, courts must independently analyze each claim, even if the subject of a defendant's ineffective-assistance claim relates to the same error. Because the Court of Appeals failed to apply the standards set forth in *Strickland v Washington*, 466 US 668 (1984), to defendant's ineffective-assistance claims, the Court of Appeals' holdings as to those claims were reversed and the case was remanded to the Court of Appeals to review those claims under the *Strickland* framework in light of the trial record and the record produced at the *Ginther* hearing.

1. Under *Strickland*, establishing ineffective assistance requires a defendant to show that trial counsel's performance was objectively deficient and that the deficiencies prejudiced the defendant. Prejudice means a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. The plain-error standard set forth in *People v Carines*, 460 Mich 750 (1999), which governs unpreserved errors at trial, has four elements: (1) error must have occurred, (2) the error was plain, i.e., clear or obvious, (3) the plain error affected substantial rights, and (4) the plain, forfeited error resulted in the conviction of an actually innocent defendant or an error seriously affected the fairness, integrity, or public reputation of judicial proceedings independent of the defendant's innocence. A "clear or obvious" error under the second prong is one that is not subject to reasonable dispute. The third element generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings. Under *Carines*, it is the trial court's unobjected-to error that is the subject of plain-error review, whereas the ultimate determination of an ineffective-assistance claim under *Strickland* is whether the defendant has suffered a genuine deprivation of the right to effective assistance of counsel. Accordingly, plain-error claims and ineffective-assistance claims have their own elements and require different analyses. Furthermore, an appellate court need not look beyond the trial court record when reviewing a trial court's mistake for plain error, whereas the errors underlying ineffective-assistance claims often are not apparent from the trial record and require additional evidentiary development. Accordingly, courts should address ineffective-assistance claims based on the pertinent inquiry—the effect of counsel's deficient performance—considering the pertinent facts, which may include facts developed at an evidentiary hearing.

2. The Court of Appeals impermissibly conflated the plain-error and ineffective-assistance standards when analyzing the admission of the ammunition and murder weapon. Defendant argued on appeal that this evidence was the fruit of an unlawful search under the Fourth Amendment because his father lacked actual or apparent authority to consent to the police officers' request to search his belongings. The Court of Appeals held that defendant did not meet his burden of establishing a plain error affecting his substantial rights regarding the impropriety of the search and introduction of the allegedly illegal fruits of that search. The panel's analysis suggested that any error was not readily apparent from the record and therefore

not obvious under *Carines*. But defendant also challenged his counsel's effectiveness relating to the introduction of this evidence, specifically alleging that his counsel's failure to move to suppress the evidence constituted deficient performance and that it prejudiced him. The panel did not evaluate counsel's performance or the prejudice that resulted from it at all, instead relying on its plain-error analysis to conclude that the related ineffective-assistance claims must also fail. However, whether an error was obvious to the trial court is not an element of an ineffective-assistance claim. Given the centrality of the gun and ammunition to the prosecution's case, any ineffective assistance resulting in their admission might have prejudiced defendant. The proper analysis would have applied *Strickland*'s two prongs and asked whether counsel's failure to object to the evidence constituted prejudicial deficient performance.

3. The Court of Appeals also erred by conflating the plain-error and ineffective-assistance standards when analyzing the admission of Fant's statements through the testimony of her fiancé's sister, Linda Wilkerson. Wilkerson testified that Fant said that defendant had been threatening Fant's family. Defendant contended on appeal that those hearsay statements were inadmissible and that the trial court erroneously admitted them as excited utterances. In its plain-error analysis of this issue, the Court of Appeals rejected defendant's argument because any error in admitting the testimony was not clear or obvious given defendant's failure to object. However, the fact that any error was not obvious did not justify rejecting defendant's ineffective-assistance claim; rather, the relevant questions for the Court were whether counsel's failure to object was deficient performance and whether it prejudiced defendant. The Court of Appeals alternatively concluded that any plain error in admitting Wilkerson's statements did not affect defendant's substantial rights, given that the statements were evidence of premeditation but the jury acquitted defendant of first-degree murder. This conclusion could have been reached only by properly applying the *Strickland* test, which requires considerations of defense counsel's actions and their effect in light of all of the evidence relating to that claim, including that developed at any evidentiary hearing, and that proper application was not evident in the Court's opinion.

Court of Appeals judgment reversed in part; case remanded to the Court of Appeals for further proceedings.

Justice CLEMENT took no part in the decision of this case.

©2018 State of Michigan

# OPINION

Chief Justice:
Stephen J. Markman

Justices:
Brian K. Zahra
Bridget M. McCormack
David F. Viviano
Richard H. Bernstein
Kurtis T. Wilder
Elizabeth T. Clement

FILED June 15, 2018

S T A T E   O F   M I C H I G A N

SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellee,

v

No. 153309

ANDREW MAURICE RANDOLPH,

       Defendant-Appellant.

_____

BEFORE THE ENTIRE BENCH (except CLEMENT, J.)

VIVIANO, J.

This case requires us to consider whether a defendant's failure to satisfy the plain-error test in connection with a legal mistake by the trial court necessarily precludes the defendant from establishing the ineffective assistance of his trial counsel relating to that same mistake. Because these standards of review have separate legal elements that focus on different facts, we hold that a failure to satisfy the plain-error test will not, without more, foreclose a defendant's claim of ineffective assistance of trial counsel. This is true

even when the subject of each claim is the same. Therefore, even when a defendant cannot succeed on a claim being reviewed for plain error, courts may not simply conclude, without independent consideration, that a defendant is unable to succeed on an ineffective-assistance claim relating to the same underlying issue.

In the instant case, the Court of Appeals conflated the two standards of review, and therefore failed to properly analyze defendant's ineffective-assistance claims. Therefore, we reverse the Court of Appeals' holdings regarding those claims and remand the case to that Court for reconsideration of those claims in light of the analysis below.

## I. FACTS AND PROCEDURAL HISTORY

Defendant lived with his girlfriend, Kanisha Fant. They quarreled throughout the night of December 9, 2012, with defendant making various threats against Fant's family. At some point, he packed his belongings into bags but left them behind when he departed. Kanisha's mother, Vena Fant, brought the bags to the home of defendant's father, Alphonso Taylor.

The next day, gunshots struck Vena's home. One bullet pierced Vena's neck, killing her. After the police arrived, defendant showed up at the scene and was taken into custody. The police lacked sufficient evidence to charge defendant, however, and he was released. The same day, without a search warrant, the police obtained Taylor's consent to search the bags containing defendant's belongings. They found several rounds of .357 ammunition. The Bureau of Alcohol, Tobacco, Firearms, and Explosives was alerted, and it obtained an arrest warrant for defendant's violation of federal law prohibiting a felon (which he was) from possessing ammunition.

2

In February 2013, an arrest warrant was issued and executed on defendant at his brother's apartment, where defendant had been staying. Because his brother was on parole, the police searched the apartment based on his brother's parolee status.[1] During the search, they found a handgun linked to the homicide.

Defendant was charged with first-degree premeditated murder and felony-firearm, among other things. The prosecution's case relied, in part, on testimony about threats defendant had made to the victim's family on December 10 and evidence of the ammunition and gun found during the investigation. Regarding the threats, Linda Wilkerson, the sister of Vena's fiancé, testified that Vena said that defendant, throughout the day, had been calling and threatening to kill the family. Vena told Wilkerson that everyone needed to be alert. Defense counsel did not object to this testimony, nor did he object to the admission of the ammunition and gun.

Defendant was convicted of the lesser offense of second-degree murder, MCL 750.317, discharging a firearm into a building, MCL 750.234b, being a felon in possession of a firearm, MCL 750.224f, and possessing a firearm during the commission of a felony, MCL 750.227b. On appeal, defendant argued, among other issues, that his trial counsel was constitutionally ineffective, and the Court of Appeals remanded to the trial court for a *Ginther*[2] hearing.[3] Defendant's father, Taylor, testified at the hearing that

---

[1] See Mich Admin Code, R 791.7735(2) (permitting a parole agent to conduct a warrantless search of a parolee's property when the agent has reasonable cause to believe a parole violation exists).

[2] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

[3] *People v Randolph*, unpublished order of the Court of Appeals, entered March 26, 2015 (Docket No. 321551), p 1.

defendant was not living at his house when Vena brought defendant's belongings there, and, in fact, had never lived there. Taylor was told to give the bags to defendant, and he testified that he never touched the bags or received defendant's permission to open them. When the police searched the items, they never asked if Taylor had permission to go through them. Trial counsel admitted at the hearing that there was no strategic reason for failing to file a motion to suppress the ammunition found at Taylor's house. He simply thought defendant lacked standing to make such a claim.

The trial court rejected defendant's claim of ineffective assistance of trial counsel, finding that counsel's performance was not deficient and that, in any case, defendant was not prejudiced. Defendant appealed. He also raised a host of unpreserved errors, asking that they be reviewed for plain error. For the reasons discussed below, the Court of Appeals affirmed defendant's conviction, finding neither his claims of trial court error nor his claim of ineffective assistance persuasive.[4] Defendant sought leave to appeal in this Court, and we ordered briefing on "whether a defendant's failure to demonstrate plain error precludes a finding of ineffective assistance of trial counsel; and, in particular, . . . whether the prejudice standard under the third prong of plain error . . . is the same as the *Strickland* [*v Washington*] prejudice standard . . . ."[5]

---

[4] *People v Randolph*, unpublished per curiam opinion of the Court of Appeals, issued November 24, 2015 (Docket No. 321551), pp 6-10.

[5] *People v Randolph*, 500 Mich 999 (2017), citing *Strickland v Washington*, 466 US 668, 694; 104 S Ct 2052; 80 L Ed 2d 674 (1984).

## II. STANDARD OF REVIEW

Questions of law, such as the applicability of legal doctrines to a given set of facts, are reviewed de novo.[6]

## III. ANALYSIS

The issue in this case involves the relationship between the standards for reviewing unpreserved claims that the trial court erred (which are reviewed for plain error) and related claims that trial counsel was constitutionally ineffective. Does a defendant's failure to demonstrate the former preclude him or her from being able to demonstrate the latter? This question arises because it is not uncommon for a defendant to challenge the same underlying error through both frameworks.[7] Here, for example, defendant claims that the trial court's admission of the murder weapon and ammunition was plain error, while also claiming that his trial counsel's failure to object to the admission of that evidence constitutes ineffective assistance. Thus his basic challenge to the admission of the evidence is made in two separate claims for relief. He approaches the admission of Vena's statements similarly, contending on the one hand that the trial

---

[6] *People v Dupree*, 486 Mich 693, 702; 788 NW2d 399 (2010); *People v Thousand*, 465 Mich 149, 156; 631 NW2d 694 (2001).

[7] See, e.g., *Gordon v United States*, 518 F3d 1291, 1298 (CA 11, 2008) (noting that an "unobjected-to error" subject to plain-error review could be articulated as a claim of ineffective assistance); *Rhoades v State*, 848 NW2d 22, 33 (Iowa, 2014) (Mansfield, J., concurring) (noting that while Iowa does not recognize a plain-error rule, "[i]n some respects, we are using ineffective assistance as a substitute for a plain error rule"); see also *United States v Saro*, 306 US App DC 277, 281; 24 F3d 283 (1994) ("[T]here is a natural analogy between the assertion of 'plain error' and the assertion of ineffective assistance of counsel.").

court plainly erred by admitting them, and on the other hand that his attorney was constitutionally deficient for allowing that error to happen. Does defendant's inability to satisfy the plain-error test preclude him from satisfying the Sixth Amendment test when he is complaining about the same underlying mistake?

Our analysis begins with a simple examination of the elements of each standard of review. Under *Strickland v Washington*, establishing ineffective assistance requires a defendant to show (1) that trial counsel's performance was objectively deficient, and (2) that the deficiencies prejudiced the defendant.[8] Prejudice means "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome."[9]

Our plain-error standard, governing unpreserved errors at trial, derives from federal law.[10] As we noted in *People v Carines*, the test has four elements:

> 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) . . . the plain error affected substantial rights . . . [, and 4)] once a defendant satisfies these three requirements, an appellate court must exercise its discretion in deciding whether to reverse. Reversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affected the fairness,

---

[8] *Strickland*, 466 US at 688; see also *People v Pickens*, 446 Mich 298, 338; 521 NW2d 797 (1994) (adopting the *Strickland* test as the standard for ineffective assistance under Michigan's Constitution).

[9] *Strickland*, 466 US at 694.

[10] See *People v Grant*, 445 Mich 535, 553; 520 NW2d 123 (1994) (adopting the plain-error test for unpreserved nonconstitutional errors from *United States v Olano*, 507 US 725; 113 S Ct 1770; 123 L Ed 2d 508 (1993)).

6

integrity or public reputation of judicial proceedings independent of the defendant's innocence.[11]

A "clear or obvious" error under the second prong is one that is not "subject to reasonable dispute."[12] The third *Carines* element "generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings."[13]

As an initial matter, the specific error that is the focus of each standard is different. It is the trial court's unobjected-to error that is the subject of plain-error review.[14] By contrast, the "ultimate determination" of an ineffective-assistance claim "is not the propriety of the trial court's actions with regard to an alleged error, but whether defendant has suffered a genuine deprivation of his right to effective assistance of counsel . . . ."[15] There will no doubt be occasions when both standards are relevant; trial counsel's deficient performance will often result in a trial court error, but the claims associated with each type of error have their own elements and require different analyses.

---

[11] *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999) (rearticulating the *Olano/Grant* standard and applying it to unpreserved constitutional errors) (quotation marks and citation omitted).

[12] *Puckett v United States*, 556 US 129, 135; 129 S Ct 1423; 173 L Ed 2d 266 (2009).

[13] *Carines*, 460 Mich at 763.

[14] See, e.g., *Saro*, 24 F3d at 286 ("Obviousness" for purposes of plain-error review "is assessed from the perspective of the trial court; the error must be 'so "plain" the trial judge and prosecutor were derelict in countenancing it, even absent the defendant's timely assistance in detecting it.' "), quoting *United States v Frady*, 456 US 152, 163; 102 S Ct 1584; 71 L Ed 2d 816 (1982).

[15] *Deck v State*, 68 SW3d 418, 428 (Mo, 2002).

In evaluating a trial court's error the appellate court is making one determination, and in evaluating trial counsel's deficient performance, the determination is different.[16]

The tests for each determination reflect their differences. The first two prongs of the plain-error standard require that an error exist and that it be obvious.[17] Neither of these alone satisfies either *Strickland* prong. A trial court's error does not tell us (1) whether counsel performed deficiently with respect to that trial court error or (2), if counsel's performance was deficient, whether it prejudiced the defendant.[18] The obviousness of the error, the second plain-error test element, is no different. While in some instances an obvious error may correlate with counsel's ineffectiveness in responding to it and the prejudice resulting from that failure, in others instances it will not.

---

[16] See generally *United States v Carthorne*, 878 F3d 458, 465 (CA 4, 2017) ("Plain error review by appellate courts is used 'to correct only particularly egregious errors' by a trial court. . . . By comparison, the ineffective assistance inquiry on collateral review does not involve the correction of an error by the district court, but focuses more broadly on the duty of counsel to raise critical issues for that court's consideration."); see also *Hagos v People*, 288 P3d 116, 121; 2012 CO 63 (Colo, 2012) ("The two claims serve different purposes and each requires an independent, fact-specific analysis. The [plain-error analysis] addresses whether the prejudice resulted from the trial court's acts or omissions, while the ineffective assistance claim examines whether prejudice resulted from counsel's acts or omissions.").

[17] *Carines*, 460 Mich at 763.

[18] The inverse is true as well. While counsel's failure to object to testimony or argument that the trial court properly admitted might rarely constitute ineffective assistance, see generally *People v Riley (After Remand)*, 468 Mich 135, 142; 659 NW2d 611 (2003) ("Ineffective assistance of counsel cannot be predicated on the failure to make a frivolous or meritless motion."), we cannot categorically state that any time a defendant is unable to satisfy the first prong of *Carines*, a *Strickland* claim relating to the same issue must fail, given the different elements of each test.

Examples are helpful. A defendant might appeal a trial court's obvious error of permitting a prosecutor to extensively reference the defendant's post-arrest, post-*Miranda*[19] silence,[20] a clear due process violation. But nothing about that obvious error by the court, without more, helps the defendant meet his or her burden in bringing an ineffective-assistance claim, because *Strickland*'s two prongs ask different questions. At issue in a claim of ineffective assistance of counsel is whether counsel's failure to object to the improper evidence was constitutionally deficient, and if so whether that failure prejudiced the defendant. And "[c]ounsel may decide, for strategic reasons, not to object to an obvious error."[21] If counsel's strategy is reasonable, then his or her performance was not deficient.[22]

Conversely, an error's lack of obviousness does not, without more, necessarily preclude an ineffective-assistance claim relating to the same issue. Simply because an error was unclear does not mean that counsel could let it pass without objection. Indeed, an ineffective-assistance claim might allege deficient performance that caused the error to be unclear. For example, an examination of defense counsel's performance might reveal that he or she deficiently failed to develop the record or pursue a line of questioning that

---

[19] *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

[20] See, e.g., *People v Shafier*, 483 Mich 205, 224; 768 NW2d 305 (2009).

[21] *Gordon*, 518 F3d at 1300.

[22] See, e.g., *People v Carbin*, 463 Mich 590, 600; 623 NW2d 884 (2001) ("In [proving deficient performance], the defendant must overcome a strong presumption that counsel's performance constituted sound trial strategy."), citing *Strickland*, 466 US at 690.

would have made an error obvious.[23]   In such a case, it would be circular to reject the ineffective-assistance claim on the grounds that the error was not clear under the plain-error standard.   Trial counsel's own deficient performance—e.g., his or her failure to develop the record making the error clear—would make it impossible for the defendant to have that unconstitutional performance evaluated.[24]

Each standard does require a showing of prejudice: *Carines*'s third prong and *Strickland*'s second.   But even here, a finding that a defendant failed to satisfy the prejudice prong when complaining about an error by the court will not necessarily mean that the defendant is unable to prevail on an ineffective-assistance claim relating to the same underlying issue.   In fact, the record on which the claims are assessed will typically be different.   An appellate court need not look beyond the trial court record when

---

[23] See *Ex parte Taylor*, 10 So 3d 1075, 1079 (Ala, 2005) (Stuart, J., concurring) (noting that the trial record might, in certain cases, support a finding of no plain error, but that "on subsequent review of facts developed surrounding counsel's performance with regard to the issue, the more developed record might lead to the conclusion that counsel's errors with regard to making the record for review of the substantive claim" constituted ineffective assistance).

[24] Indeed, the very reason for the plain-error framework, with its extra elements (particularly *Carines*'s fourth prong), is for instances in which defense counsel failed to preserve the argument by raising it in the trial court.   See *Carines*, 460 Mich at 764-765 ("[R]equiring a contemporaneous objection provides the trial court 'an opportunity to correct the error, which could thereby obviate the necessity of further legal proceedings and would be by far the best time to address a defendant's constitutional and nonconstitutional rights.' "), quoting *Grant*, 445 Mich at 551; *Deck*, 68 SW3d at 427 ("If no objection was made or the error was otherwise not preserved, then the trial court cannot normally be accused of error in its rulings, much less prejudicial error.").   Had the claim been preserved by contemporaneous objection, the error would have been brought to the court's attention and a different standard would guide the reviewing court.   And, of course, the failure to object in the first place might itself constitute ineffective assistance.

reviewing a trial court's mistake for plain error; an "appellate court can find and correct the error without any entanglement in contested or unknown facts . . . ."[25] That is the nature of plain-error review.

By contrast, the errors underlying ineffective-assistance claims often are not apparent from the trial record but instead require additional evidentiary development.[26] This is because ineffective-assistance claims center on deficiencies in the defense counsel's decision-making, which will not always reveal themselves in the official record.[27] As the United States Supreme Court has noted, the trial record is "devoted to issues of guilt or innocence" and will often "not disclose the facts necessary to decide either prong of the *Strickland* analysis. If the alleged error is one of commission, the record may reflect the action taken by counsel but not the reasons for it."[28] Further, "[w]ithout additional factual development, . . . an appellate court may not be able to ascertain whether the alleged error was prejudicial."[29] For these reasons, in Michigan, a

---

[25] *United States v Caputo*, 978 F2d 972, 974 (CA 7, 1992).

[26] See 3 LaFave, Criminal Procedure (4th ed), § 11.7(e), p 962 ("Appellate courts uniformly note that where a claim of ineffective assistance of trial counsel could be more fully developed by evidence outside the trial record, the preferable procedure is to present it initially in a setting that permits an evidentiary hearing.").

[27] See *Massaro v United States*, 538 US 500, 505; 123 S Ct 1690; 155 L Ed 2d 714 (2003) (noting that it was preferable for ineffective-assistance claims to be brought on collateral review because on direct review the "trial record [is] not developed precisely for the object of litigating or preserving the claim and thus [is] often incomplete or inadequate for this purpose").

[28] *Id*.

[29] *Id*.; see also *Gov't of Virgin Islands v Vanterpool*, 767 F3d 157, 163 (CA 3, 2014) (noting that ineffective-assistance claims are not "usually cognizable" on direct review

defendant can seek an evidentiary hearing in the trial court on defense counsel's performance and then bring an ineffective-assistance claim on direct appeal with the benefit of the augmented hearing record.[30]

Because facts outside the trial record could be critical to an ineffective-assistance claim, a court presented with such a claim coupled with a related plain-error argument cannot simply plug in the plain-error prejudice analysis for the ineffective-assistance prejudice analysis. As with the remaining elements of each claim, a court must evaluate the record evidence relevant to each independent legal claim.

Finally, *Carines*'s fourth prong—focusing on manifest injustice—lacks any analog in the *Strickland* test. In short, the elements of an ineffective-assistance claim evaluate counsel's performance, and while sometimes a trial court's error relating to the same underlying issue will have facts in common with that Sixth Amendment claim, the legal framework for each operates independently. All of this makes sense, given the different types of errors each test is meant to address. There is no easy shortcut when reviewing separate appellate claims of the court's and counsel's errors, even where those errors have as their focus the same underlying issue.

Our holding here thus does not change the fundamental nature of the analyses for plain error and ineffective assistance. Rather, we merely seek to emphasize that courts should address ineffective-assistance claims based on the pertinent inquiry—the effect of

---

because there typically is not "a record developed enough to assess the efficacy of defense counsel").

[30] *Ginther*, 390 Mich at 443-444.

counsel's deficient performance—considering the pertinent facts, which may include facts developed at an evidentiary hearing.

## IV. APPLICATION

In this case, we conclude that the Court of Appeals impermissibly conflated the plain-error and ineffective-assistance standards at least twice. The first involved the admission of the ammunition and murder weapon. Defendant contends that this evidence was the fruit of an unlawful search under the Fourth Amendment. According to defendant, the search, which occurred at his father's home, was unlawful because his father lacked actual or apparent authority to consent to the police officers' request to search defendant's bags. The discovery of the ammunition among the belongings resulted in the involvement of the federal agents, which led to the arrest warrant and culminated in the execution of the warrant at defendant's brother's home. The search of that home was possible because of his brother's parolee status. And it was during that search that the murder weapon was found. Thus, according to defendant, the gun and ammunition were only discovered because of the initial illegal search of defendant's belongings and were therefore inadmissible.[31]

---

[31] See generally *Segura v United States*, 468 US 796, 804; 104 S Ct 3380; 82 L Ed 2d 599 (1984) ("[T]he exclusionary rule [i.e., the suppression of illegally seized evidence] reaches not only primary evidence obtained as a direct result of an illegal search or seizure, . . . but also evidence later discovered and found to be derivative of an illegality or 'fruit of the poisonous tree.' ") (citations omitted); *People v LoCicero (After Remand)*, 453 Mich 496, 508; 556 NW2d 498 (1996) ("The exclusionary rule forbids the use of direct and indirect evidence acquired from governmental misconduct, such as evidence from an illegal police search.").

The Court of Appeals held that "defendant has not met his burden of establishing a plain error affecting his substantial rights"[32] regarding the impropriety of the search and introduction of the allegedly illegal fruits of that search, albeit without a perfectly clear explanation for that conclusion. On the one hand, the panel reasoned that defendant might have lacked standing to object to the search because "the fact that defendant left his belongings behind when he fled and never returned suggested that he abandoned his belongings . . . ."[33] But the Court also stated that "[w]hile it is possible that defendant was responsible for having his things transferred to Taylor, such that he may not have abandoned them, the available record lacks sufficient information to make that determination."[34] Finally, the Court observed that "even assuming that the ammunition was found as the result of an illegal search, the record does not contain sufficient information to determine whether the gun was likewise subject to suppression."[35]

It seems the Court's holding was based on *Carines*'s second prong, i.e., any error was not obvious. Indeed, by stating that the "available record [was] insufficient to establish a Fourth Amendment violation,"[36] the Court suggested that any error was not readily apparent from the record.

---

[32] *Randolph*, unpub op at 6.

[33] *Id*. at 5.

[34] *Id*. at 5-6.

[35] *Id*. at 6.

[36] *Id*. at 5.

14

But defendant also challenged his counsel's effectiveness relating to the introduction of this evidence. Specifically, he alleged that his counsel's failure to move to suppress the evidence constituted deficient performance and that it prejudiced him. The panel did not evaluate counsel's performance or the prejudice that resulted from it at all, instead relying on its plain-error work: "Similarly, defendant has failed to establish plain error in the admission of the evidence regarding the ammunition, defendant's arrest on the federal warrant, and the guns, and thus his related ineffective assistance of counsel claims must also fail."[37] In other words, defense counsel was not ineffective because the error would not have been obvious to the trial court. Of course, obviousness to the trial court is not an element of the *Strickland* test, nor is it even always relevant. And, as explained previously, an error's obscurity could be due to trial counsel's deficient performance, if he or she failed to develop the record in a manner that would have made the errors clear. Given the centrality of the gun and ammunition to the prosecution's case, any ineffective assistance resulting in their admission might have prejudiced defendant. The proper analysis would apply *Strickland*'s two prongs and ask whether counsel's failure to object to the evidence constituted prejudicial deficient performance.

The Court of Appeals made the same mistake in its evaluation of the admission of Vena's statements through the testimony of her fiancé's sister, Wilkerson. According to Wilkerson, Vena claimed that defendant had been threatening Vena's family. Defendant

---

[37] *Id*. at 10.

15

has contended on appeal that those hearsay statements were inadmissible and that the trial court erroneously admitted them as excited utterances.[38]

In its plain-error analysis of this issue, the Court of Appeals rejected defendant's argument for two reasons. First, it concluded that any error in admitting the testimony was not clear or obvious given defendant's failure to object.[39] Second, as an alternative rationale, the Court reasoned that any plain error "did not affect defendant's substantial rights"—i.e., did not prejudice defendant—because "[Vena's] statement to Wilkerson was evidence that the subsequent shooting was done with a premeditated intent to kill, but defendant was acquitted of first-degree murder and convicted of second-degree murder, which was supported by other evidence unrelated to this hearsay statement."[40]

Defendant also claimed that his attorney was ineffective for failing to object to this hearsay evidence. In its consideration of that question, the Court simply noted that defendant's claim "must fail" because his plain-error claim failed.[41] The Court continued, "Even if we were to accept defendant's claim that Vena's first statement to

---

[38] MRE 803(2) (defining an "excited utterance" as "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition").

[39] *Randolph*, unpub op at 4 ("While there is some evidence in the record to suggest that Vena was not overcome by the stress or excitement caused by the threat, that issue was not fully explored due to defendant's failure to object. Therefore, we cannot conclude that any error is clear or obvious.").

[40] *Id.*

[41] *Id.* at 10.

Wilkerson was inadmissible hearsay, defendant cannot show that he was prejudiced by counsel's failure to object [to the hearsay] for the reasons discussed earlier."[42]

The Court of Appeals' first rationale for rejecting defendant's plain-error claim—that the error was not obvious—cannot justify rejecting defendant's ineffective-assistance claim. Once again, defense counsel's own deficient performance might have cloaked the obviousness of an error (and in fact the panel's reasoning suggests that it might well have), but that failure cannot then preclude an ineffective-assistance claim. The questions the Court needed to answer were whether counsel's failure to object was deficient performance and whether it prejudiced defendant.

The Court's second rationale was that defendant had not established plain error because he could not show that the admission of the statements prejudiced him—specifically, because the hearsay statements were relevant to establishing premeditation but the jury rejected premeditation by acquitting defendant of first-degree murder. But the Court could reach this conclusion only after properly applying *Strickland*, which requires considerations of defense counsel's actions and their effect in light of all of the evidence relating to that claim, including that developed at any evidentiary hearing.

That proper application is not evident in the Court's opinion. The Court parsed the testimony and the claims of error relating to it. It stated that even if "Vena's *first statement* to Wilkerson was inadmissible hearsay," defendant could not show prejudice.[43] It appears that the "first statement" was Vena's comment that defendant had "been

---

[42] *Id*.

[43] *Id*. (emphasis added).

calling all day threaten' [sic] to kill the family, especially Lo and Vontay."[44] But Wilkerson also testified that Vena said she might call her son to warn him about the threats. In response to the prosecutor's question, " 'How was it that Vena said it?' Wilkerson answered, 'She said, she's like, well, we better watch out. He said he's goin' get us, we better be on the alert. It was more or less like that type of—we better, we better watch out 'cause he said he's goin' get us, he's goin' kill us, he's goin' kill us.' "[45]

The Court of Appeals did not address these additional statements in its ineffective-assistance analysis. But, in its plain-error analysis, the Court rejected defendant's argument because it was unclear whether Wilkerson gave an unresponsive answer or whether she answered by demonstrating the tone and manner in which Vena had made the statements. Seemingly, then, the Court thought any error in admitting this testimony was not clear or obvious (i.e., defendant failed to satisfy *Carines*'s second prong). Again, a defendant's failure to satisfy the second prong of *Carines*'s plain-error test (that the error was obvious) does not foreclose an ineffective-assistance claim, which evaluates questions separate from the obviousness of an error. But other than the error's lack of obviousness, the Court of Appeals offered no other reason for rejecting defendant's ineffective-assistance claim regarding these subsequent hearsay statements from Vena. Consequently, it either failed to address defendant's ineffective-assistance argument

---

[44] *Id*. at 4 (quotation marks omitted).

[45] *Id*.

concerning the subsequent statements or it once again impermissibly conflated the plain-error and ineffective-assistance analyses.[46]

These errors are sufficient to require a remand to the Court of Appeals so it can apply the appropriate framework in evaluating defendant's ineffective-assistance claims. On remand, the Court of Appeals shall closely reassess all of defendant's ineffective-assistance arguments under the *Strickland* standard, taking into account the record evidence relevant to that standard.[47]

## V. CONCLUSION

In this case we hold that a defendant's inability to satisfy the plain-error standard in connection with a specific trial court error does not necessarily mean that he or she cannot meet the ineffective-assistance standard regarding counsel's alleged deficient performance relating to that same error. Courts must independently analyze each claim, even if the subject of a defendant's claim relates to the same error. Because the Court of Appeals failed to apply *Strickland* to defendant's ineffective-assistance claims, we

---

[46] To the extent the Court of Appeals held that none of Vena's hearsay statements could have prejudiced defendant under *Strickland* because they were relevant only to premeditation, the Court's opinion is unclear. Nor did the Court ever consider whether the statements could have been relevant for other purposes. Consequently, the Court's failure to apply *Strickland* to the ineffective-assistance claim requires a remand.

[47] Because the above discussion is sufficient to resolve this appeal, we decline to consider the second question we asked the parties to brief, i.e., "whether the prejudice standard under the third prong of plain error . . . is the same as the *Strickland* prejudice standard[.]" *Randolph*, 500 Mich at 999.

reverse the Court of Appeals' holdings as to those claims and remand this case to the Court of Appeals to review those claims under the *Strickland* framework in light of the trial record and the record produced at the *Ginther* hearing.

David F. Viviano
Stephen J. Markman
Brian K. Zahra
Bridget M. McCormack
Richard H. Bernstein
Kurtis T. Wilder

CLEMENT, J., took no part in the decision of this case.